## SINCLAIR REFINING CO. v LECRONE MOTOR TRANSPORT LINE, INC.

Ohio Appeals, 2nd Dist, Franklin Co

No 3283.  Decided Dec 31, 1940

Chester, Keyser & Stouffer, Cleveland, for defendant-appellant.

W. B. McLeskey, Cleveland, for plaintiff-appellee.

## OPINION

By HORNBECK, PJ.

This is an appeal from a judgment of the Common Pleas Court affirming a money judgment, for plaintiff in the sum of Two Hundred Ninety Seven and 91/100 dollars ($297.91) with interest and costs, of the Municipal Court of the City of Columbus.  We refer to the parties as plaintiff and defendant.

There are five errors assigned:

(1)  In the failure of the trial court to sustain defendant's motion for directed verdict at the conclusion of the plaintiff's case.

(2)  That the verdict and judgment are against the weight of the evidence.

(3)  They are contrary to law.

(4)  That the court erred in granting a judgment on an excessive verdict.

(5 and 6)  Error in admitting certain of plaintiff's exhibits.

We will discuss the errors generally, as we are satisfied that all matters must be resolved in favor of or against the appellant upon the principal question involved, namely, the liability of defendant for any gasoline and oil delivered by the plaintiff to the service station at 434 West Spring Street in Columbus.

The action was to recover the sum of $297.91 for gasoline and oil claimed to have been sold and delivered by the plaintiff to the defendant.

It is the claim of the plaintiff that it delivered its merchandise to one Frank Campbell, who was the duly authorized agent of defendant, or if not the duly authorized agent of defendant, that defendant ratified his transactions or by conduct is estopped to deny his agency.

The record is somewhat extensive, a little difficult to follow because witnesses were put on out of order and their testimony not very carefully carried into the transcript but it is not especially difficult to determine the basic evidence upon which the case must be decided.  We will not undertake to set out in detail the evidence upon which we reach our conclusions, but be satisfied in the main with the mere statement of such conclusions.

It fairly appears that the relationship between Campbell and the defendant was that of lessor and lessee.  This appears not only from the transactions which these parties had with each other subsequent to their written agreement under which Campbell went into possession and operation of the filling station, but also by the terms of the agreement.  So that, if it were essen-

tial to plaintiff's recovery that proof of express agency appears it would fail. Nor are we satisfied that the defendant ratified the acts of Campbell, so that the relationship of principal and agent may be established between Campbell and the defendant. Upon the theory of estoppel we are convinced that the trial judge had the right under the evidence to hold against the defendant. Briefly, this follows, because the defendant created a situation, the natural effect of which was to cause the plaintiff to believe that in the delivery of its merchandise to Frank Campbell it was upon the authority of the defendant company.

Prior to the transactions determinative of this case the defendant company was engaged in the motor freight business and in the selling of gasoline and oil to brokers who owned and operated tractors and in this relation had been a purchaser of gasoline and oil from the plaintiff company. Prior to March 1, 1938, the offices had been located at 783 North Fourth Street and on or about that date it moved its offices to 434 West Spring Street. On the rear of this property facing Fletcher Street, the defendant thereafter constructed a filling station at a distance of some 50 to 100 feet from the buildings of defendant company.

On the 8th of February, 1938, the defendant contracted, in writing, with the plaintiff for the purchase of not less than 120,000 gallons nor more than 150,000 gallons of gasoline during each yearly period that the agreement was to be in effect. The address of the defendant was indicated as 783 North Fourth Street. This agreement is extensive, consisting of numerous numbered paragraphs, among which were, that the terms should be cash on delivery without discount unless terms of credit are arranged at seller's credit department, and, that the agreement could be terminated by the purchaser at the end of one year after its date of execution or at the end of any yearly period thereafter, upon 30 days previous written notice to the seller.

It appears that in the main the purchases made by the defendant under the contract were cash on delivery but at times considerable credit was extended upon one occasion reaching a sum as high as $3000.00.

It further appears that at no time was any written notice given by the purchaser to the seller of any intention to cancel and terminate this agreement.

On the 11th of June, 1938, the defendant entered into another written agreement with the plaintiff, in which defendant's place of business was carried as 434 West Spring Street, by the terms of which the plaintiff agreed to sell and the defendant agreed to buy for a period of one year after the date of the contract, according to the buyer's requirements, certain oils, the product of plaintiff. No amount of minimum or maximum quantities required was set out in this contract.

On the 13th of June, 1938, which, it will be observed, is but two days after signing of the oil contract between the plaintiff and defendant, the defendant entered into its written agreement with Frank Campbell, effecting the relationship which we have heretofore defined. In this contract, Frank Campbell was carried as agent which we are satisfied was an improper designation of his status.

On June 10th and June 12th, 1938, gasoline and oil were delivered to the service station at the rear of 434 West Spring Street by plaintiff. The merchandise itemized was indicated as sold to defendant, 434 West Spring Street, as were all subsequent invoices. It is admitted that these deliveries were paid for by the defendant company by its check of date June 23, 1938. At this point, we will say that it is claimed that certain exhibits consisting of eight invoices for merchandise claimed to have been delivered by plaintiff to the service station were erroneously admitted on behalf of plaintiff because the signatures thereto were not authenticated. We are satisfied, if in any instance, there was failure of proof of authentication of signature it was not material because the trial judge had the

right to find that delivery had been made as claimed by plaintiff as shown by its account as well as the delivery invoices.

Upon deliveries subsequent to June 13, 1938, payments were made at certain times as deliveries were effected, but not always, and an indebtedness was allowed to accumulate until he had reached the amount of $297.91 on March 27, 1939, when Campbell vacated the service station. On August 26, 1938, an equipment rental agreement was entered into between the plaintiff and the defendant, defendant's business address being 434 West Spring Street. In this agreement the defendant was referred to as the customer and in paragraph 2 of the agreement is was stated:

"Equipment delivered to customer shall be used by customer in its business upon only the following premises situated at 434 West Spring St., Columbus, Ohio, and owned by Lecrone Motor Transport Line, Inc."

It was further provided that this agreement could only be terminated upon five days written notice and is admitted that no written notice was given by defendant of its desire to terminate the agreement. Paragraph 14 of this agreement provides,

"This agreement is personal to customer and shall not be assigned in whole or in part by customer without the consent of Sinclair in writing first obtained."

In the application which accompanies this agreement there is a questionaire wherein the delivery distance from the plant of plaintiff to the service station is fixed at one mile. This question and answer appear: "If a new account, what will be the monthly gasoline gallonage?" (A). "10,000." Also this question and answer, "Are premises owned by the customer?" (A). "Yes."

The equipment to be installed were a pump and a thousand gallon tank. There are other indicia of facts which would estop the defendant from denying that the merchandise in question was sold to it but we are satisfied that we have set forth sufficient to justify the trial judge in his finding and judgment, subject only to the claim of the defendant that it had through its agent notified the manager of plaintiff company that the defendant would not conduct a gasoline business at their new location on Spring Street, that the filling station on Fletcher Street was being leased to Campbell, who had no financial backing, and that after the first dump of gasoline and oil which the defendant would pay for the plaintiff must look to Campbell for payment of any gasoline and oil delivered to the station. If this statement was made to the manager of plaintiff company, of course it had no right to maintain its action because it was put on notice that any sale that was made to the station was made to Campbell, individually, and not to the defendant. But the conversation during which this statement of Campbell's liability was claimed to have been made is denied by plaintiff and its agent and upon this issue rests this case.

The trial judge had the right to accept the version of the transactions and occurrences and the claimed notice of Campbell's individual operation of the station as contended for by the plaintiff. So doing he had the right to find in plaintiff's behalf. The whole case may be reconciled upon the theory of good faith of both parties, subject only to the one question whether or not the defendant was put on notice that any gasoline after the first dump which it delivered to the service station was to be sold to Campbell individually.

There is little necessity of citing legal authority. Agency by estoppel is well recognized in the law. In 1 O. Jur. 632, it is said,

"The estoppel is allowed on the ground of negligence or fraud on the part of the principal, upon the theory that when one of two innocent persons must suffer loss, the loss should fall upon him whose conduct brought

about the situation." Citing **Kaneles v Locke, 12 Oh Ap 210.**

We have examined all the errors assigned and find that none of them is well made and that the judgment should be affirmed.

GEIGER & BARNES, JJ., concur.